at all. Argument not to exceed 15 minutes per side. Mr. Crim, you may proceed. Good afternoon, Your Honors. May it please the Court, Gabriel Crim for the people in State of Tennessee. I'd like to reserve three minutes of my time for rebuttal. Your Honors, this case is about the Tennessee Legislature's ability to promote public safety through means endorsed by the federal government, adopted by every other state, and upheld as constitutional by this Court and other circuits across the country. The District Court's orders warrant reversal because it granted vague and sweeping relief that exceeded its Article III power and violated the basic principles of equity. Because the plaintiff's sex offenders failed to sue the state officers that enforced their obligation to report and limit their access to children, the only legitimate merits issue is whether Defendant David Roush has been violating the offender's rights by distributing basic information about them and their sexual crimes. This Court and the Supreme Court have already answered that question in Cutshall v. Sundquist, Smith v. Doe, and Doe v. Bredesen. So everything that Roush is in charge of, you say has been resolved in your favor, right? The things that Snyder said are out, and you may disagree with the merits of that decision, would have to be something that they would have to sue a different defendant for. Is that your position? Yes, Your Honor. It's our position that Snyder doesn't control for several reasons. And the first is that Snyder pertains mainly to the child access rules in Michigan at the time. And those rules aren't properly before the Court in this case because neither Governor Lee nor Director Roush enforces those rules in Tennessee. In Tennessee, those are affirmative impositions on the sex offender, and if the sex offender violates any one of those rules, they're subject to prosecution. So the appropriate defendant would be a local attorney. In Tennessee, we have locally elected District Attorneys General. They're responsible for bringing those prosecutions. We also have local police who are responsible for gathering the information from the sex offenders when they come in to report. In this case, it's on a quarterly basis. So... Can I ask you about the in-person reporting? Because Snyder, I think, struck down...well, didn't strike it down, but basically said, no, you can't retroactively apply the in-person requirements from Michigan that were fairly onerous. There are in-person requirements in Tennessee. Were those in place when the resident case was decided in 05 or whenever that was? Yes, Your Honor. If I'm recalling correctly, so the Bredesen case is from 2007. It mainly challenges the 2004 amendments to the statute. I believe our in-person reporting rule dates to 1997, but if I'm wrong about that, I believe it dates to 2004. The case doesn't really discuss...my recollection of the case is it mentions reporting, but doesn't really go into the guts of whether the in-person reporting is kind of at issue. But I take it...so if we were to say the Tennessee in-person requirements are okay, the Snyder said Michigan in-person is not okay. Are there enough distinctions between the requirements that that makes sense, or is there some conflict? Well, Your Honor, they're not exactly the same requirements. It's hard to tell from Snyder exactly what the requirements were in Michigan. The Snyder court really focuses on the fact that there was a need to make immediate updates. In Tennessee, we have a statute that defines 48 hours to be 48 hours excluding holidays and weekends as well. But I thought in Michigan, you have to go report in person if you change your job, or you want to go out of the country. I thought there were some very specific things that you have to do. In Tennessee, it seems like you don't have all of those same requirements, that it's mostly you move to a new location, you have to check in in person, maybe you check in every year, I don't know what it is. But it doesn't...I guess it didn't seem to me just comparing the statutes that they were on all fours. Well, candidly, Your Honor, many of the reporting requirements are the same because they're mandated...they're encouraged by federal law, I should say. Okay. Let me ask you this question. I take it Roush is not in charge or the governor of enforcing the in-person...I mean, if I fail to carry out the in-person reporting, neither one of them is in charge of enforcing it. That's absolutely correct, Your Honor, and I think it raises an important issue about this case, which is if Director Roush were not to publish any of the registry information at all, the local police departments probably would notice that the people who had been reporting every three months prior to that time, and that they had seen in some of these areas, it's one police officer that sits at a desk every three months and sees all of the sex offenders that have to come report. You know, the local authorities are fully capable of knowing who...so long as they have someone come into the jurisdiction and identify themselves, which the local... Well, if they sue, if you say they can't sue the governor and they can't sue Roush, is there a person that... Absolutely, Your Honor. If you put me under ex parte young, you can sue somebody that might have some kind of a responsibility. Absolutely, Your Honor. It's our position that if you look at the ex parte young cases, they require this through line from the plaintiff's course of conduct, to the substantive law, to the enforcement authority, to the defendant. We think in this case, they've drawn that through line with respect to the TBI director as it relates to the publication rules because that's what the TBI director has authority to do. As it relates to the registry, you know, the requirement to come in and register as well as the requirement to, you know, stay away from schools and parks and playgrounds at particular times under particular circumstances. We have local prosecutors who are...they're locally elected and they're charged with prosecuting crimes in the state of Tennessee. And these are going to be local crimes, Your Honor. So they're not part of the executive branch? Are they agents of...they're not agents of the governor, the attorney general, or anyone? What about the attorney general? Could you sue the attorney general? No, Your Honor. The attorney general is not responsible for these prosecutions. And in fact, they're not making that argument at all. They're relying on this ouster theory to connect the state level agents to...or sorry, the statewide officers to the local district attorneys. What about like a county sheriff or law enforcement official who would be in charge of enforcing the law too? Those again are local officers. I want to make clear that they are, you know, for some constitutional reasons, they are an officer of the state. They do exercise the authority of the state rather than the authority of the locality. And for that reason, you know... I take it all prosecutions are common or... Sure. ...versus... Sure. Yes. You're saying that you can't sue anybody? No, Your Honor. Not at all. We're saying that they could likely sue if they want to bring the reporting rules into question or if they want to bring the child access rules into question. They could sue the local police. They could sue the local DA. What we're saying is Governor Lee doesn't control those people. Director Rauch doesn't control those people. To Your Honor's point, they're not gubernatorial appointees. They don't stand for removal at the will of any state level officer, sued in this case or otherwise. They're locally elected. They hold their offices at the pleasure of their constituents locally and so they carry out the law on behalf of those folks and on behalf of the state. Okay. So you're... Are you... Okay. So they can... They have... There is an ex parte Young theory with Rauch for something. Is any of that still viable or would we... If we agreed with you, would we remand and say, take a look at this injunction again and only... Or whatever, declaratory relief and only limit the relief to what Rauch is in charge of? Or is he in charge of anything that doesn't pass muster, I guess? We'd welcome that sort of remand in this case, but we think that's actually unnecessary here because of the prior precedent in Cutshall in Doe versus Smith... Sorry, Smith versus Doe, the Supreme Court case from 2003, as well as the Bredesen case from this court in 2007. There's also just an enormous amount of persuasive precedent from other circuits pertaining to publication rules, pertaining to the specific rules. But isn't the injunction much broader though than... So when you say that we would not need to do anything, you think that the injunction is tailored in the way that it should be? Oh no, not at all, Your Honor. What I meant to say was that there's no need to remand the case to see if the district court could craft a narrower injunction as pertains to Director Rauch and his authorities, because this court and other courts have already addressed the constitutionality of those authorities. And the case law on this is extraordinarily strong, especially as it pertains specifically to publishing information. That would be... All of this hinges on accepting your argument that the governor is not a proper authority grounds. Yes, absolutely, Your Honor. So if we said, no governor, the only person you get is the director of TBI doing ex parte young theory, you're saying we could resolve whatever the claims are? I'm saying that this court is bound by precedent that says that Director Rauch's publication authorities that he exercises as part of this regime are perfectly constitutional. And again... So it would effectively be a merits ruling? Yes, Your Honor, I believe that would go to the merits of the case. Summary judgment grant in your favor? Yes, absolutely. Well, you know, I think it would be instructions to the district court to grant summary judgment in our favor for Director Rauch and to dismiss Governor Lee from the case. I think it's very important... According to that theory, they can't sue anybody. You're saying they have to sue every sheriff in every county? How many counties in Tennessee? Ninety-one or something like that? There are ninety-some counties in Tennessee, Your Honor. In most instances, it's not going to be terribly complicated to find the appropriate party because it is going to be a local district attorney, a local police department. Is there any collective action that they could bring? Are you saying that every person who wants to challenge would have to sue the person in their county individually and there's no way that all of them could go to Nashville or something and bring this case against everybody? Your Honor, I'm reluctant to give legal advice to the other side about how to craft this sort of lawsuit. It's notable. The Miller case, I believe, from the Eighth Circuit was a class action. It's possible that you could probably construct a class action. You know, it's also important for the court to remember that the court wouldn't have jurisdiction under if there were speculative circumstances about when some prosecutor maybe in East Tennessee would bring a prosecution against a resident of West Tennessee. So who are the folks who would be responsible for enforcement for one of these folks living some place where they can't live? Well, Your Honor. That's one of the things. I mean, wasn't that one of the things that Snyder did deal with? Restrictions on where people could actually reside? Not just about publications. Not just about you can't be around a school during certain times and that kind of thing, but you literally can't live in these locations. Who would enforce that? Who could they sue? Well, Your Honor, I believe in that instance the offender would have moved into an area where they should not live and that would be, again, it would be a local prosecution. The facts are very local. It would be this offender lives, you know, in this house on this block, on this street. What if I'm just dissuaded from moving? I can't move. I mean, I understand that's probably a standing question, how imminent is it, whatever, speculative, but I could name the local prosecutor, right, to challenge my ability to move into another neighborhood? Your Honor, I believe so. You know, if the plaintiff has concrete intent, that would satisfy, you know, standing jurisprudence and I think the ex parte young mode of proceeding kind of allows... Do you think, I'm sorry, I know I asked this before, but is it also the sheriff or are you talking about just a local prosecutor? Could I sue a law enforcement, like the person who would arrest me? I assume I could sue them too? You know, I think there are ex parte young cases that allow that and I think it might depend on exactly what you're seeking relief from and exactly what provision of the law you're trying to, you know, not be subject to, but again, it's, these are all things that plaintiffs could have done in this case, did not do in this case and that's why we have the jurisdictional issues. I'll reserve the balance of my time if that's all right. Yeah, you'll have your... Thank you. Please support Justin Adams for the plaintiff's John Doe's 1-9, or actually at this point John Doe's 1-9 minus the late number 8. This is not a case about where a district court applied some expansive interpretation of some judge made rule. This is an ex post facto case. Judge Trauger enforced a well established constitutional protection against majority abuse of unpopular minority and she simply applied Snyder to a very similar statutory scheme. So I think that's important to understand out of the box. I think there's a question about how comparable the, how comparable are the reporting requirements, the Michigan statute to the Tennessee statute. I think they're very, very comparable. In Tennessee you have to report within 48 hours of... But do you agree that the Tennessee ones have been upheld? I mean they were in place when Bredesen was decided, right? So we couldn't revisit that or how can a court revisit that? Snyder dealt with Michigan, that case dealt with Tennessee, that would be the easiest way to distinguish the cases. Your Honor, what was upheld in Bredesen was the bare requirement to register. The fact of in-person reporting wasn't actually addressed as a factor. But was it in place as a requirement? Yes, in Bredesen, yes. That is correct. Was that an issue in the case? The issue in the case was the being required to register and report, yes. But... The district court here just set aside the whole requirements of everything, whatever that was a subsection of the statute, right? Correct, Your Honor, because the district court here said following Snyder, you look at the entire statutory scheme as it exists. And by the way, the entire statutory scheme in this case is retroactive as to all of these plaintiffs because all of their offenses were committed before the very first SOR statute was enacted. So you look at the whole statutory scheme and she found that it had the same three elements that were found collectively in Snyder to make it punitive in effect. And then she said, under Tennessee law, I have to see whether I can sever this. And she, applying Tennessee law severance, said I don't think I can sever this because I would have to essentially create a new category of offender who was required to register and report but wasn't subject to geographical restrictions, wasn't subject to the classification scheme, and so forth. And so, instead, she enjoined enforcement of the entire scheme and left it up to the legislature to decide how they wanted to correct the constitutional violation. There are many ways one could do that. I'm not here to instruct the General Assembly how they should do it and neither was Judge Trauger. She simply left it up to the legislature to correct it. The legislature hadn't done anything on it since this matter, right?  That's correct. There have actually been several challenges to the sex offender registry statute since 2016. And to my knowledge, this is the first that's ever been appealed. And during that time, the General Assembly hasn't done, and several of those have been in final judgment removing people from the registry. And to date, the General Assembly has done nothing to correct those, to respond to those findings. But isn't the injunction that you have now kind of throwing the baby out with the bathwater, so to speak, because there are, I mean, to Judge Nalbandian's point, there are a lot of practices or provisions under the statute which have been blessed in the past, which are perfectly fine. But now the entire statute is, or excuse me, the codes are not in play anymore. I would say that the only thing in the current statute that has been blessed is the prior requirement to register. Bredesen doesn't actually address whether an in-person requirement is burdensome. It simply addresses whether registration, and it simply cites to the Smith case, the Supreme Court's case, which, by the way, did not deal with an in-person reporting and registration requirement. So it doesn't, it didn't actually address the issue. What Snyder did was look specifically at not just reporting a registration, no, in-person reporting and registration. And that's what Snyder, in Snyder, this Court held that in-person, the requirement to show up in-person and combined with the geographical restrictions of where you can live, work, and be present, those were what made it resemble the punishment of probation or parole. Well, we've kind of dived into the deep end, I think, with you, but maybe we should back up and say, why do your plaintiffs even have standing here specifically with respect to Governor Lee? In the case of Governor Lee, we have standing because Governor Lee doesn't just have a general authority to, you know, faithfully execute the laws. Does he? He does have that general authority, but he doesn't just have that. He also has a specific statutory duty to bring ouster proceedings against officials who violate the law. And when he directs the Attorney General or the DA to bring... That's what you briefed. What case supports that, saying that this general ouster authority is enough to, you know, render him... Your Honor, I don't have a case to cite. To my knowledge, no one has ever made that argument. No one has ever raised that statute. And so, no, I don't have a precedent to cite on that. But I do think it responds... What the case law says is the mere general authority, the mere general requirement to faithfully execute the laws isn't enough. Well, this isn't a mere general, you know, I took an oath to uphold the laws of the Constitution of Tennessee. It's a statutory command that says, if you become aware of someone violating the law, failing to knowingly or willfully committing misconduct in office or neglecting to perform any duty in office, you have a duty to direct the Attorney General or the local District Attorney General to bring an ouster proceeding. And upon being directed, they have a duty to bring that. Is there a difference... Is there a difference in Michigan with what the governor is charged with? Or... I mean, it doesn't look like the court in Snyder addressed this argument at all. Snyder was the governor, right? Correct, Your Honor. Is there some appreciable difference, perhaps, that they had standing there? Or is it just the case that it didn't come up in that case? To my knowledge, Your Honor, it didn't come up. But if I may... And your ouster argument didn't come up in Universal Life Church or some of the other cases that have kind of said, just the execution, whatever, is not enough. Correct, Your Honor. I don't believe it's been raised. Turning to Director Rausch, I think it's a... Do you have a Tennessee case that would suggest that either the governor or Rausch is the proper party to sue in these cases? Surely with everybody wanting to sue the state or the state officers, there's been a case someplace out there. To my knowledge, Your Honor, I don't know of a Tennessee state case that would be on point. I do think it's notable that the defendants rely upon Doe versus Bredesen, which I don't know that this issue of standing to sue the governor was raised in that case, but that's neither here nor there. With Director Rausch, I think it's a different argument. With Director Rausch, I think we're in a very similar circumstance to, I think it's Doe versus DeWine. So in Doe versus DeWine, the plaintiff's claim was that I'm entitled to a hearing to determine whether I should still be classified as a violent sexual offender or something of that nature. And she sued the Attorney General and maybe the Director of Public Safety, it just escaped me. She sued two statewide officials, and DeWine, this court said, those are proper defendants. No, they don't have the power to give her what she wants, ultimately, which is a hearing, but they do have the power to grant her some relief because they are in charge of administering the sex offender registry and they have the power to remove her from the registry pending a hearing, which gives her some relief. Well, here, Director Rausch, the power that Director Rausch has is to remove people from the registry. If you're not on the registry, there's no notice to local law enforcement when you get pulled over that you're subject to it. When you no longer get notices from the TBI director's computer system saying, hey, this person hasn't renewed, none of that happens. So it gives you some relief. And what the court said in DeWine was it doesn't have to be complete relief, it doesn't have to be perfect relief, it just has to be some relief. And what the district court's injunction here against Director Rausch in particular did was it caused our clients to be removed from the registry, which now gave them relief, some relief, and very effective relief, I would say, so far from enforcement of the geographical restrictions, from enforcement of the classification, which was also one of the classification schemes. You're saying that as long as I have one hook to get this one defendant, then I can get the whole code not thrown out, but not enforced ex post facto? It just takes the one, like, yes, Director Rausch is a proper party on an ex parte yunk theory for the registration, for the registry requirement, which, by the way, seems to be one of the things that's okay. But in theory, if I were going to overturn that case, I would have to sue him. So as long as I've got one claim that could in theory be okay, I can get everything else? No, that's not our argument. Our argument is that the Act unconstitutionally burdens these defendants to the same extent as the Michigan Act. Director Rausch, he's not playing some bit part in the system. He is administering the heart of the system. It's the Sexual Offender Registry Act. He is administering the heart of the scheme, which is the database that you're put on, the database that you have to put your information on, and the database that notifies... By itself, there's nothing wrong with the database under Smith. What is he doing that's problematic? He's administering the whole scheme that makes it possible to enforce these other unconstitutional burdens. He doesn't have anything to do with enforcing any of those burdens, right? No. He's not putting anybody in jail for living in the wrong place. But in DeWine, they said the same thing. The Attorney General in that case didn't have direct criminal enforcement ability, but it didn't matter. Under DeWine, it said that because they administer the registry and can give relief, that's good enough. And I want to be very clear... If all he does is administer the registry, in other words, he keeps it up, he makes sure that people are on there who are supposed to be on there, then the relief that could be granted, which because the registry is okay, then what relief could he meet out, so to speak, if ultimately your clients were successful? The relief that he did meet out was removing them from the registry, which means local law enforcement, because they're not on the registry... No, no, no. I get the one thing leads to another thing leads to another, but I'm starting from the point of the registry itself is fine. So if we start from the place of the registry is actually okay, and he shouldn't be enjoined from having the registry itself, if the ultimate relief that they want is not to have these geographical restrictions, you know, enforced and those kinds of things, he doesn't have any authority in that regard, right? Well, no, he does, because he's the one that tells the law enforcement officers that they're subject to it, so that is his authority. So then the thing that maybe he could be enjoined from doing is sharing the information with the enforcers? Right. Or, I mean, what Judge Trauger considered and rejected was you could be enjoined to create some new class of offender on your database of people who are on the registry but cannot have these things enforced against them. And what she thought was, well, that looks like rewriting the statutory scheme. The legislature created a scheme where you're an offender or you're not, and if you're an offender, you're on the registry, and if you're on the registry, you're subject to all these restrictions, period. And she didn't think it was proper to create sort of a parallel registry scheme for people who aren't subject to all that. That looked like rewriting the statute in a way that's not proper under Tennessee's law of severance. So it sounds like your argument is the only way to kind of preserve so that they're not subject to an ex post facto law is to just get them off of the registry? As it's currently written, yes. And if the legislature chooses to revisit it and create a different scheme that doesn't violate Snyder, then that's the legislature's prerogative. But they haven't done that yet. Thank you. Can you talk about Doe versus DeWine? I find that case a little bit confusing on kind of what it does seem to me to allow some claims on kind of what the person might be in charge of it. Well, absolutely, Your Honor. I think the key to Doe v. DeWine is understanding what the defendants in that case were arguing versus what we're arguing in this case. In Doe v. DeWine, the Attorney General of Ohio and another state level defendant were trying to get out of the case entirely, and the court said, no, you do enforce this act in the ex parte young relevant sense because you do have responsibilities. You don't bring prosecutions, but you do have responsibilities that relate to the mechanics of the act. We're not contesting that at all. We're saying that Director Rausch does have responsibilities that relate to the mechanics of the act. They're not prosecution responsibilities, but they're still reviewable. There's some backdoor theory where you can say he has to put people on the registry. They shouldn't be on the registry to begin with because of these bad parts of the law. So I can get to those parts of the law to get at what he is responsible for. I appreciate the question, Your Honor, because I'd like to draw a distinction between being, quote, unquote, on the registry and being published on the TBI's website. What Director Rausch does is take certain registry information and publish it on the website. The fact that an offender doesn't appear on the TBI's public-facing website does not mean the offender doesn't qualify for all the requirements of the act. The act designates people as being on the registry or not based on the offenses that they committed. So it's not a matter of, well, you're off the website, so you're off the registry. And since you're off the registry, you don't have to comply with any of these rules. It's simply not. But I'm glad Your Honor brings that up because actually these registrants or these offenders are required to carry driver's licenses that identify their sex offender status. They're saying they got relief from the Tennessee Department of Safety in this case, getting that designation taken off for these plaintiffs. Your Honor, the Department of Public Safety is not a party in this case, and nobody that runs the Department of Public Safety has been named as a defendant in this case. If they want to go after the designation on the driver's licenses, they should sue that party as well. Another thing that they haven't done. Your Honor, I think this gets back to the... If they prevailed, if the entire code was not, they were exempted from it, I take it they would not be registered, they wouldn't be on the registry? Well, Your Honor, I believe going forward... Well, it would be okay under Bredesen, but the way the district court granted the relief here, that doesn't matter because she said it's non-severable, right? Yes, Your Honor, and the severability issue is really the key issue in this case. And it really gets back to the fact that you cannot look at the scheme as a whole. You have to look at these particular amendments, these particular provisions. The ex post facto clause analysis, the jurisprudence on this is very clear. This is a limitation on the passage of laws. Here we're talking about dozens of laws compiled into a code. But we have to do the proper party first, then... Yes. I guess the idea of the party is then work out what the relief might be. Yes, absolutely. Some parts of this statute are unconstitutional. Do you admit that? No, not at all, Your Honor, absolutely not. Do you admit that some of them can't be applied ex post facto if we applied Snyder? Well, actually, I'm glad Your Honor... And we had the correct defendants. I'm glad Your Honor brings up the point because the other side has talked a lot about what was at issue and not at issue in Snyder. And we've briefed the fact that not at issue in Snyder was the Snyder court's reliance on this post enactment evidence to determine the punitive nature of a law. We think that was an error invited by the parties in that case. We don't think either party contested the fact that we could bring in this evidence of efficacy, whether or not a law is doing the thing it was intended to do after the fact to determine whether it was punitive when it was passed. We think that's a huge issue in this case and we think that undermines the applicability of Snyder to the facts of this case. Okay, on that question, do we have a proper party to even evaluate that question? On some of the merits of Snyder. You say, oh, Snyder's, for whatever reason, didn't really address what's at issue here. There was invited error. The issues didn't come up. You know, whatever it is. By the way, standing apparently didn't come up either. But we have to have a proper party. So I think your main argument is the governor's not the proper party and Director Rausch is also not the proper party to evaluate those claims either. For the child access rules, that's absolutely right, Your Honor. And to be clear, I was making this distinction on the merits of Snyder as a fallback argument. And I think it goes along with something they're saying. Thank you, Your Honor. Thank you.